

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable H. Pat Edwards
Civil District Attorney
Records Building, Dallas County
Dallas 2, Texas

Dear Sir:                    Opinion No. 0-6929

                   Re:  Clarification of duties and
                        responsibilities of certain
                        officials in Dallas County
                        when certain shortages appear
                        in the accounts of the Tax
                        Assessor-Collector.

     Your recent request for our opinion on the above
question reads as follows:

     "Under date of October 20, 1945, the County
     Auditor, acting as he states in compliance with
     Articles 1651, 1654 and 1665, Revised Civil
     Statutes of Texas, filed with the Commissioners'
     Court of Dallas County, a report of his audit of
     the 'Books of account and records pertaining to
     cash receipts and disbursements of Ed Cobb, Tax
     Assessor and Collector for the year ended Decem-
     ber 31, 1944, including a cash audit as of July
     23, 1945.'

     "This report reveals:

          "(a) That as of December 31, 1944, there
     was due to the bank account carried as 'Un-
     apportioned Tax Fund Account No. 404', a
     cash shortage of $108.68, which is reported
     as 'Due to Bank from Ed Cobb'. This shortage
     arises out of the fact that the Tax Assessor
     and Collector failed by said amount to col-
     lect as much money as the tax receipts issued

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

by him totalled. The County Auditor advises that as of November 7, 1945, this amount still has not been paid to the bank or to the County Treasurer by the Tax Assessor and Collector.

"(b) That on March 28, 1943, a deputy of the Tax Assessor and Collector lost $150.00 of the county tax money while on his way from the bank to the Tax Assessor's Office, said amount having been obtained from the bank for the purpose of making change. The Auditor advises that as of the date of November 7, 1945, neither the Tax Assessor nor the deputy who lost said money had repaid same to the County.

"(c) That during the year 1943 the Tax Assessor used ad valorem tax money to cash 'N.S.F. checks', 'I.O.U.' for one of his deputies and 'forged checks' totalling $713.85, the total of which checks, etc., the Tax Assessor and Collector has for more than two years neglected to make good by paying the actual cash thereon into his accounts of cash on hand.

"(d) That during the years 1941, 1942, 1943 and 1944 certain shortages in the collection of State license fees in the Highway Department occurred by reason of the deputies failing to turn in as much cash as they had issued license receipts for, and that while the Tax Assessor and Collector has settled his accounts with the State, he has withheld county funds for the purpose of balancing his accounts against such shortages, and has to date failed and neglected to cover said shortages in the sum of $944.87 by the placing of actual cash for same in his cash accounts.

"Upon the consideration of said report by the Commissioners' Court and a discussion of the facts revealed thereby, the hereinafter set forth questions were raised and the Criminal District Attorney was requested to advise the Court as to the law in the premises in regard to same, it being the contention of the Auditor that he had discharged his responsibility under the law when he reported the facts to the Commissioners' Court, and that it is the duty of the Commissioners' Court to order the shortages, 'I.O.U.s', 'N.S.F. and Forged checks' removed

Hon. H. Pat Edwards,   page 3

from the Assessor's accounts by payment of actual cash
into the County Treasury.  The Commissioners' Court on
the other hand, takes the position that inasmuch as it
does not appoint the Auditor, it has no  power to direct
him as to the performance of his duties, and particular-
ly since by the express provisions of the Statutes a
positive duty is enjoined upon the County Auditor, (a)
to 'see to the strict enforcement of the law covering
county finances' (Article 1651 Revised Civil Statutes),
and (b) the County Auditor is expressly authorized 'to
cause an accounting and to take such steps at the ex-
pense of the  County as is necessary in his judgment to
protect the interest of the County' (Article 1656a,
Revised Civil Statutes); the Court is not required to
take any official action in regard to the situation re-
vealed by this Auditor's Report.

"The Auditor and the Commissioners' Court agree that
County Tax money has been applied to the 'N.S.F. and
forged checks', etc., and that the Tax Assessor should
make good the shortage in the ad valorem tax account.  A
disagreement seems to revolve around the issue as to
whose responsibility it is to cause the situation revealed
in the report to be remedied at the earliest possible date,
inasmuch as all of the transactions revealed occurred more
than three years past, and the  application of the statutes
of limitations is in the minds of all parties.

"Accordingly, the Court has propounded and requested
answers as to the law in the premises to the following
questions:

"(1)  Is the Tax Assessor and Collector per-
sonally responsible to the County for the shortages
'N.S.F.' checks, 'I.O.U.s' of his deputies carried
in his cash accounts, etc., same having occurred
in the handling of County tax moneys?

"(2)  If such official is personally responsible,
when should settlement therefor or payment thereof
be made to the County by the payment of actual cash
into the County Treasurer to cover said transactions?

"(3)  Is it legal for the County Tax Assessor and
Collector to carry as cash items in his accounts for
more than thirty days 'I.O.U.s', 'N.S.F. checks' of
his deputies, 'forged checks' and shortages charge-
able to his deputies?

559

"(4)  Whose duty is it to demand and enforce a
settlement and payment in cash to the County of
such transactions where it appears County tax
money has been used to cover same?

"We have concluded that the questions propounded should
be answered as follows:

"(1)  Under the provisions of Article 7252 and
the law as set forth in 34 Texas Jurisprudence
under 'Public Officials', Page 437, Paragraph 86,
and the opinion of the Supreme Court of Texas in
the case of Dunlap vs Pool, 176 S. W. (2) Page 310,
the Tax Assessor is personally liable for the
shortages, losses, forged and N.S.F. checks arising
out of transactions handled by his deputies in the
administration of public funds and he should forth-
with pay into the County Treasurer in cash the total
of said items.

"(2)  Under the provisions of Article 7261 Revised
Civil Statutes, the Tax Collector is required at the
end of each month to pay over to the County Treasurer
'all taxes collected for the county during said month',
and he should in all events finally adjust and settle
his account with the Commissioners' Court for the
county taxes collected, 'on or before the 1st day
of May of each year'.  Inasmuch as it clearly appears
from this report that all of the shortages 'N.S.F.
and forged checks', 'Deputy's I.O.U.s' and other
items occurred prior to and during the year 1944,
and May 1st, 1945 has long since passed, it is our
opinion that the Tax Assessor and Collector should
immediately clear such items from his accounts by
placing therein actual cash equal in amount to the
total of such items.

"(3)  The Tax Assessor and Collector cannot
legally carry as cash items for the purpose of
balancing 'cash accounts', 'I.O.U.s', 'Shortages
charged to his deputies', 'N.S.F. and forged checks'
longer than the end of the calendar month in which
said transactions arose, and in all events by May 1st
of the year following the occurrence of such trans-
actions the Tax Assessor and Collector should finally settle
his accounts by making good such transactions by the
payment of actual cash into the County Treasury.

"(4)  Under the express provisions of Article
1651, which  enjoins upon the County Auditor the
positive duty to 'see to the strict enforcement
of the law governing county finances', and Ar-
ticle 1665a, Vernon's Annotated Civil Statutes,
which expressly confers authority upon the County
Auditor to 'take  such steps at the expense of the
County as are necessary in his judgment to protect
the interest of the County * * *',  the primary
duty to enforce a cash settlement of transactions
 shown by this report to be due the County rests
upon the County Auditor.  In the event the County
Auditor neglects or refrains to enforce such settle-
ment, it is our opinion that under the provisions
of Articles 7262 and 7292, Revised Civil Statutes,
the Commissioners' Court is both duty-bound and
authorized to direct the Tax Assessor and Collector
to pay the amount shown by this report to be due
the County, and upon failure to do so, to cause a
suit to be instituted against the official and
his bondsmen by the Criminal District Attorney who,
under the provisions of Article 335 of the Revised
Civil Statutes, is duty bound to bring such suit.

"We are of the opinion that the law's requirement as
to an accounting and settlement of the accounts of the Tax
Assessor and Collector can only be met by the payment of
actual cash, that is, 'legal tender' into  the County
Treasury, and that although from an accounting standpoint,
an 'I.O.U.' and 'N.S.F. check' charged against a deputy
may be used by the Assessor for the purpose of balancing
the accounts, only actual cash money can be used to settle
an account.  That if the law's requirement that all tax
money collected by the Tax Assessor and Collector be de-
posited into the County Depository as collected, and paid
over to the County Treasurer at the end of each calendar
month, and that on the first day of May of each year a
final adjustment and settlement of the accounts of the Tax
Assessor and Collector is made, no such 'I.O.Us' 'shortages',
'N.S.F. and forged checks' and similar items could appear in
an official's report.

"The Tax Assessor and Collector, as we understand his
arguments to the Commissioners' Court, contends that inasmuch
as he is under bond,  that he does not have to adjust and
settle his accounts finally by the payment of actual cash
into the Treasury until he goes out of office.  We therefore,
respectfully ask whether or not you concur with us in our
answers to the questions propounded and our view of the law
in regard to the final settlement of accounts of the Tax
Assessor and Collector with the County as herein set forth.

"In consideration of the questions it is to be
borne in mind that:   (a) Dallas County has a popula-
tion in excess of 190,000 inhabitants; (b) Its Tax
Assessor and Collector is paid on an annual salary
basis; (c) It operates and so operated during the
years 1943 and 1944 under the County Depository Act,
and has a duly selected, qualified and acting County
Depository; and (d) The District Judges of Dallas
County under the provisions of the Statutes, have
appointed and Dallas County now has and had during
1943 and 1944, a qualified and acting County Auditor.

"A copy of the Auditor's Report referred to herein
is enclosed for your further information, and your at-
tention is directed to Pages 6, 8 and 9 wherein the
items referred to above are set forth.   In regard to
the 'forged checks', I beg to advise that these checks
were not accepted in payment of taxes, credit for which
could therefore be reversed, but were acquired by the
official by his exchanging public tax moneys for said
void instruments."

Article 7247, Vernon's Annotated Civil Statutes, provides
that each Assessor and Collector of Taxes shall give bond, pay-
able to the Governor and his successors in office, in a sum
which shall be equal to ten per cent of the whole amount of
the State taxes of the county, as shown by the last preceding
tax assessment, but not to exceed $50,000.00, conditioned for
the faithful performance of the duties of his office as
Assessor and Collector of Taxes for and during the full term
for which he was elected or appointed.

Art. 7249 provides that the Assessor and Collector of
Taxes shall give a similar bond to that required of him by the
State with like conditions to the County Judge of his county
and his successors in office, in a sum of not less than ten
per cent of the whole amount of the County taxes, but not to
exceed $50,000.00.

Art. 7254 provides as follows:

"The tax collector shall be the receiver and col-
lector of all taxes assessed upon the tax list in his
county, whether assessed for the State or county,
school, poor house or other purposes; and he shall pro-
ceed to collect the same according to law, and place
the same when collected to the proper fund, and pay the
same over to the proper authorities, as hereinafter
provided."

Hon. H. Pat Edwards,   page 7

Art. 7252 provides in part as follows:

"Each Assessor and Collector of Taxes may appoint one or more deputies to assist him in the assessment and collection of taxes, and may require such bond from the person so appointed, as he deems necessary for his indemnity; and the Assessor and Collector of Taxes shall in all cases be liable and accountable for the proceedings and misconduct in office of his deputies; and the deputies appointed in accordance with the provisions of this Article shall do and perform all the duties imposed and required by law of Assessors and Collectors of Taxes; and all acts of such deputies done in conformity with law shall be as binding and valid as if done by the Assessor and Collector of Taxes in person, . . . ."

61 Cor. Jur., Sec. 1315, p. 1023, lays down the following rules:

"In regard to money collected by him and in his hands, a tax collector is, in a number of jurisdictions, regarded, not as a bailee, but as an insurer, and therefore responsible for the taxes collected, although he is robbed of the money or it is stolen from him, ... ."

34 Tex. Jur., Sec. 86, pp. 474-475, is in part as follows:

"An officer who is the custodian of public money does not occupy the position of a mere bailee for hire, who is responsible only for such care of the money as a prudent man would take of his own; nor is he a 'debtor' to the county within the ordinary meaning of the term, since, if he were, the money would be his property and he could not be guilty of misapplying it as the offense is defined in the Penal Code. He is bound to account for and pay over the money to the person entitled, less his commissions, or his sureties must pay it for him; and neither he nor his sureties are relieved from liability by the fact that the money was stolen without his fault or was lost by being deposited in a bank which failed without negligence on his part, except in some cases where the bank has been designated as a public depository... ."

The case of Boggs vs. The State, 46 Tex. Rep. 10, involved a claim against Anderson Boggs, and a number of other persons as his sureties, on a tax collector's bond.  The defendants filed a special answer alleging that Boggs, as Tax Collector, having collected the taxes, and being about to start to Austin with the money, had $1,300.00 of it stolen from him without his fault, (stating the circumstances of its loss).  The plaintiff filed exceptions to this answer, which were sustained, and this was assigned as error.  In sustaining such action of the trial court, the Court of Appeals held as follows:

"It is contended by the counsel for the appellants that Boggs, being an officer, occupied toward the State the position of a bailee for hire, in the business of collecting, preserving, and accounting for the taxes of Rusk County, and that as he took care of the money in his hands, as a prudent man would ordinarily have done, in reference to his own property, neither he nor his sureties were responsible for its loss.

"We do not understand such to be the legal position and responsibility of the public officer whose duty it is to collect and account for the money of the State as a tax collector, nor is it in accordance with the terms of his bond, signed by him and his sureties as prescribed by law.

"He is bound to account for and pay over the amount of money which he collects less his commissions, or his sureties must do it for him."

See also the following additional authorities:

Wilson v. Wichita County, 4 S. W. 67;
Coe et al vs. Foree, County Judge, 50 S. W. 616, writ refused;
Poole et al vs. Burnet County, 76 S. W. 425, by Sup. Ct;
Lanham, Governor vs. Dies et al, 98 S. W. 897;
American Indemnity Co. et al v. State, 104 S. W.(2d) 68, writ dismissed;
United States v. Prescott, 11 L. Ed. 734.

We think it is clear under the above rules of law that the Tax Assessor and Collector is personally liable to the county for the shortages, "N.S.F." checks and "I.O.U.s" of his deputies and "forged checks" carried in his cash accounts, etc., which occurred in the handling of county tax funds, as set forth in your request; therefore, your question No. 1 should be, and it is, answered in the affirmative.

Chapter 2, Title 47, which is Articles 2544-2558a, provides for county depositories, and Article 2549 thereof, after setting forth provisions relative to approval of a depository bond, contains the following provision:

". . .It shall also be the duty of the tax collector of such county to deposit all taxes collected by him, or under his authority, for the State and such county and its various districts and other municipal subdivisions, in such depository or depositories, as soon as collected, pending the preparation of his report of such collection and settlement thereon. . . ."

Art. 7249a is as follows:

"On Monday of each week each County Tax Collector shall pay over to the County Treasurer ninety per cent (90%) of all taxes collected for the County during the preceding week, and pay over to the State Treasurer ninety per cent (90%) of all taxes collected for the State during the preceding week.

"The Commissioners' Court of any County, or the Comptroller of Public Accounts, may at any time in their discretion call upon the Tax Collector for a sworn statement as to the amount of his collections made during the current month, and for a report as to the amount of taxes in the County Depository belonging to the County or State, and direct that ninety per cent (90%) of those funds be transferred to the County or State Treasury. The Commissioners' Court or the Comptroller may at any time require a sworn report from the Depository as to the amount of funds in their hands under the control of the Tax Collector. Failure or refusal of a Tax Collector to make the remittances as provided in this Act within three (3) days from the date due, or to render the statements required herein, within three (3) days after receiving notice to do so, shall constitute a misdemeanor and shall be punished by a fine not to exceed Two Hundred Dollars($200.00)."

Art. 7250 is as follows:

"Except as to compensation due such tax col-
lector as shown by his approved reports, tax money
deposited in county depositories shall be paid by
such depositories only to treasurers entitled to
receive the same, on checks drawn by such tax col-
lector in favor of such treasurer."

Art. 7260 provides in part as follows:

"1.  At the end of each month the Tax Col-
lector shall, on forms to be furnished by the
Comptroller, make an itemized report under oath to
the Comptroller, showing each and every item of ad
valorem, poll and occupation taxes collected by him
during said month, accompanied by a summarized state-
ment showing full disposition of all State taxes
collected, provided that said itemized reports for
the months of December and January of each year may
not be made for twenty-five (25) days after the end
of such months if same cannot be completed by the end
of such respective months.

"2.  He shall present such report, together with
the tax receipt stubs to the County Clerk, who shall
within two (2) days compare said report with said
stubs, and if same agree in every particular as re-
gards names, dates and amounts, he shall certify to
its correctness, . . . . provided that in counties
having a County Auditor the work mentioned in this
paragraph shall be done by the County Auditor rather
than the County Clerk.

"3.  The Tax Collector shall then immediately
forward his reports so certified to the Comptroller,
and shall pay over to the State Treasurer all moneys
collected by him for the State during said month,
excepting such amounts as he is allowed by law to pay
in his county, reserving only his commissions on the
total amount collected, . . ."

"4.  The Tax Collector shall pay over to the State Treasurer all balances in his hands belonging to the State, and finally adjust and settle his account with the Comptroller on or before the first day of May of each year, and to enable him to do so, the Commissioners Court shall convene on or before the third Monday in April for the purpose of examining and approving his final settlement papers."

Art. 7261 provides in part as follows:

"1.  The Tax Collector shall at the end of each month make like reports to the Commissioners' Court of all the collections made for the county, conforming as far as applicable and in like manner to the requirements as to the collection and report of taxes collected for the State. . .

"*  *  *

"3.  The Tax Collector shall immediately pay over to the County Treasurer all taxes collected for the county during said month, after reserving his commissions for collecting the same, and take receipts therefor, and file with the County Clerk.

"4.  At the next regular meeting of the Commissioners' Court, the Tax Collector shall appear before said Court and make a summarized statement, showing the disposition of all moneys, both of the State and county, collected by him during the previous three (3) months.  Said statement must show that all taxes due the State have been promptly remitted to the State Treasury at the end of each month, and all taxes due the county have been paid over promptly to the County Treasurer and shall file proper vouchers and receipts showing same.

"5.  The Commissioners' Court shall examine such statement and vouchers, together with an itemized report and tax receipt stubs filed each month, and shall compare the same with the tax rolls and tax receipt stubs.  If found correct in every particular, and if the Tax Collector has properly accounted for all taxes collected, as provided above, the Commissioners' Court shall enter an order approving said report, and the order approving same shall be recorded in the minutes.

"6. The Tax Collector shall finally adjust and settle his account with the Commissioners' Court for the county taxes collected, at the same time and in the same manner as is provided in the foregoing Article in his settlement with the State."

Art. 7262 provides as follows:

"If any tax collector shall have failed at the end of each month, or within three days thereof, to promptly remit to the State Treasurer the amount due by him to the State, or pay over to the county treasurer the amount due by him to the county, the commissioners court, at the next regular meeting, shall ascertain the facts; and if the tax collector fails or refuses to pay or remit the same and file proper vouchers therefor, as provided in the foregoing article, the commissioners court shall not approve his reports and accounts, but shall ascertain the amounts due by him, both to the State and county, and enter an order requiring him to pay the same to the proper treasurers, as is provided in Articles 7294 and 7295, and notify such collector, as is provided for in Article 7296 under penalty for failure to do so. Whenever the tax collector shall fail or refuse to remit to the State Treasurer the amounts due the State, when requested, the Comptroller shall notify him."

Art. 7295 is as follows:

"All tax collectors and other officers or appointees authorized to receive public moneys shall account for all moneys in their hands belonging to their respective counties, cities or towns, and pay the same over to the respective county treasurers or city treasurers whenever and as often as they may be directed to do so by the respective county judges, or county commissioners courts or mayor or board of aldermen; provided that tax collectors shall have ten days from the date of such direction within which to comply with the same."

Under the above statutes, the Tax Assessor and Collector has the following duties to perform:  To deposit all taxes collected by him, or under his authority, for the county, in the County Depository, as soon as collected, pending the preparation of his reports of such collections and settlement thereon; on Monday of each week to pay over to the County Treasurer ninety per cent (90%) of all taxes collected for the County during the preceding week; at the end of each month to make an itemized report under oath to the Commissioners' Court, showing each and every item of ad valorem, poll and occupation taxes collected by him during said month for the County, accompanied by a summarized statement showing full disposition of all County taxes collected, provided that said itemized reports for the months of December and January of each year may not be made for twenty-five (25) days after the end of such months if same cannot be completed by the end of such respective months; immediately after making said report, to pay over to the County Treasurer the balance of all taxes collected for the county during said month, after reserving his commissions for collecting the same; to appear at the next regular meeting of the Commissioners' Court and make a summarized statement, showing the disposition of all money of the county collected by him during the previous three months, and that all taxes due the county have been paid over promptly to the county treasurer; and finally adjust and settle his account with the Commissioners' Court for the county taxes collected on or before the first day of May of each year.

If the Tax Assessor and Collector fails at the end of each month, or within three days thereof, except for the taxes collected in the months of December and January, to pay over to the County Treasurer the amount due by him to the county, the commissioners' court, at its next regular meeting shall ascertain the facts; and if he fails or refuses to pay same, as provided for in Art. 7261, the commissioners' court shall not approve his reports and accounts, but shall ascertain the amount due by him to the county and enter an order requiring him to pay same to the treasurer, and notify him thereof, and said Tax Assessor and Collector shall have ten days from the date of such direction in which to comply therewith.

It is our opinion that your question No. 3 should be answered in the negative as it is clear that, under the authorities and rules of law hereinabove referred to, the Tax Assessor and Collector should make monthly reports of taxes

collected by him, as well as make payments thereof to the
proper authorities.  In no event should such reports or pay-
ments be delayed by reason of any of said public funds having
been used in any way by the deputies of the Tax Assessor and
Collector, as the law does not authorize the use of any of
said funds by the Tax Assessor and Collector, or any of his
deputies.  None of said funds belong to the Tax Assessor and
Collector and all of same should be paid to the proper au-
thorities as set forth in the various statutes governing the
handling thereof, and no part of said funds should be used to
take care of "I. O. U.s", "N. S. F." checks, or "forged checks",
or shortages of any kind.

Art. 1710 is as follows:

"The county treasurer shall keep a true account
of the receipts and expenditures of all moneys which
shall come into his hands by virtue of his office,
and of the debts due to and from his county; and
direct prosecutions according to law for the recovery
of all debts that may be due his county, and super-
intend the collection thereof."

Art. 1714 is as follows:

"He (the county treasurer) shall examine the
accounts, dockets and records of the clerks, sheriff
justices of the peace, constables and tax collector
of his county, for the purpose of ascertaining whether
any moneys of right belonging to his county are in
their hands which have not been accounted for and paid
over according to law, and shall report the same to
the commissioners' court at their next term, to the
end that suit may be instituted for the recovery
thereof."  (parenthetical matter ours)

In the case of Simmons vs. Ratliff et al, 182 S. W. (2d)
827, writ refused, the court had under consideration an action
instituted by appellant in trespass to try title to land former-
ly belonging to Rains County and in which the contention was
made that the county treasurer of Rains County, and not the
Commissioners' Court, was authorized to declare a default
under a deed of trust, this contention being based upon Ar-
ticle 1710 above set out.  In overruling said contention the
court held as follows:

Hon. H. Pat Edwards,    page 15

"Under the quoted statute, the county treasurer does have authority over certain funds of the county and authority to direct the prosecution of suits for the collection thereof, and such authority has been upheld by the courts. Trustees of Lytle School District v. Haas, County Judge, 24 Tex. Civ. App. 433, 59 S. W. 830. The authority given to the county treasurer by the statute is not exclusive, however, and it has always been the law in this State that the tribunal which we now designate as the commissioners' court is the executive head of the county and vested with authority to determine when suits or other actions should be instituted to recover funds belonging to the county, or any other suit involving the rights of property of the county. Looscan v. County of Harris, 58 Tex. 511; Ehlinger, County Judge, v. Clark, 117 Tex. 547, 8 S. W. 2d 666; Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419. Without attempting to specify the nature of any claims or suits over which the county treasurer may have exclusive jurisdiction, it is sufficient to say that, unquestionably, the commissioners' court has at least concurrent jurisdiction over such matters as those involved here and its action in declaring the indebtedness due and instructing its trustee to foreclose the deed of trust lien involved in this case was fully authorized by the law."

In the case of Hoffman et al vs. Davis et al, 100 S. W. (2d) 94, the Commission of Appeals was considering a situation where taxpaying citizens had brought suit against officers and ex-officers of the county and their bondsmen to recover for the alleged unlawful expenditure by such officers of county funds, and the court announced the following rule as to who is authorized to bring suit for a county under such circumstances:

"Ordinarily, the commissioners' court alone determines whether litigation shall be instituted in behalf of the county, but in this instance the majority of that court are the ones charged with dereliction of duty, and it is therefore in no position to act for the county. In that situation, under the foregoing statutes, the county treasurer, to whom the bonds are payable, has

Hon. H. Pat Edwards,   page 16

the statutory authority to protect the county's rights and direct the institution of suits in his name for the use of the county upon these bonds. The question then is: Where the authority to institute litigation in behalf of a county is vested by statute in a particular body or officer, may a private citizen determine whether such litigation shall be instituted and himself institute and prosecute it?

"In the case of Looscan v. County of Harris, 58 Tex. 511, there was presented for decision the question of the right of a district attorney, when the commissioners' court refuses to act, to maintain a suit in the name of the county against certain officials to recover money illegally paid out. This court, after determining that there was no statute authorizing the district attorney to institute the suit, announced the rule that, since the right to do so was vested in the commissioners' court, that right must be held to be exclusive. We quote from that opinion: 'The commissioners' court undoubtedly has the right to cause suits to be instituted in the name of and for the benefit of the county, and except where a concurrent right to do the same thing, or where an exclusive right in a specified case or cases is conferred upon some other tribunal or some other officer of the government, the commissioners' court must be deemed to be the quasi executive head of the county, vested with exclusive power to determine when a suit shall be instituted in the name of and for the benefit of the county.'

"As above pointed out, both the commissioners' court and the county treasurer are vested by statute with the right to institute this litigation. Since the former is in no position to act, the right of the latter to do so is exclusive, unless there is conferred upon the county or district attorney by article 339 the concurring right - a question which we need not determine."

It is our opinion, therefore, that in this instance, since funds belonging to the county are involved, the Commissioners' Court has the right and duty to determine whether or not it will have suit filed in behalf of the county. But this right is not exclusive in the Commissioners' Court, for the reason that, under the above cited authorities, the county treasurer also has authority to direct prosecution according to law for the recovery of said funds as debts due his county. There are also statutes which make it the duty of the county or district attorney to see that such claims are paid.

Article 339 provides as follows:

"When it shall come to the knowledge of any district or county attorney that any officer in his district or county entrusted with the collection or safe keeping of any public funds is in any manner whatsoever neglecting or abusing the trust confided in him, or in any way failing to discharge his duties under the law, he shall institute such proceedings as are necessary to compel the performance of such duties by such officer and to preserve and protect the public interests."

We had occasion to construe this statute recently in our Opinion No. 0-6376, a copy of which is enclosed herewith, wherein we were passing upon whether or not it was the duty of a County Attorney to bring a suit against an ex-tax collector and the sureties on his bond to recover fees collected by him under the Automobile Certificate of Title Act. After referring to various authorities, we held as follows:

"We think it is clear, therefore, that it is the official duty of the county attorney to bring a civil suit against the Tax Collector referred to and the surety on his bond to recover said money. We do not believe that the fact that said Tax Collector has gone out of office makes any difference as to the duty of the county attorney in this respect, as said Tax Collector was an officer at the time that the obligation arose and same are not cancelled or discharged by his going out of office.

572

"Ordinarily the Commissioners' Court alone deter-
mines whether litigation shall be instituted in favor
of the county, and in some instances the county treasurer
has the statutory authority to protect the county's rights
and direct the institution of suit in his name for the
use of the county.  It might be well, therefore, to have
the approval of  these officials in this instance, though
it is our opinion that the county attorney has the con-
curring right, as well as that it is his duty to bring
the action.  Hoffman et al v. Davis, 70 S. W. (2d) 637,
100 S. W. (2d) 94."

Your attention is also directed to the case of McAskill,
District Attorney, vs. Terrell, District Judge, et al, 259
S. W. 914, by the Supreme Court, which involved the right of
the District Attorney to prosecute and control a suit in-
stituted by the County of Bexar, by order of its Commissioners'
Court, against the County Attorney of Bexar County to recover
certain sums of money alleged to belong to Bexar County, re-
ceived by said County Attorney and not reported or accounted
for by him.  Under a contract with the Commissioners' Court,
the County was represented by other attorneys.  It appeared
from the statement of facts that in like manner suit had been
brought against the District Clerk, the County Clerk, the
Sheriff and the Constable to recover excess fees not accounted
for to the county.  The trial court held that such other offi-
cials came within the terms of Article 366 (now Art. 339), but
that the County Attorney was not included therein, as he was
not "entrusted with the collection or safekeeping of any pub-
lic funds."  The Supreme Court held that this ruling was
erroneous, and that the statute vests the District Attorney
with the right to prosecute and control such suit, and that
the duties imposed upon him by the statute could not be
properly exercised without authority to control such suit.
See also, Seagler et al vs. Adams et al, 238 S. W. 707, 250
S. W. 413, wherein the Court of Civil Appeals (238 S. W. 708)
after setting out what is now Article 339, laid down the fol-
lowing rule:

"We think the purpose of this statute was to
expressly prescribe the duties of the district or
county attorney in the circumstances therein re-
cited, and that the Legislature did not intend
thereby to limit the commissioners' court, in their
general management of the county's business affairs,

573

to the utilization of the services of the one or the other of those officers. The duties of the two sets of officers are in no manner made correlative, and it is difficult to see in what way this positive requirement upon the district or county attorney as to his independent duty could have any reference to members of the commissioners' court. It seems to us that the matter of the duty thus laid upon the attorney and that of the general authority of the commissioners' court are quite apart. Since the quoted statute not only imposed the duty, but also conferred the corresponding privilege upon the officer named of instituting suits of the character specified in behalf of the county, it may well be that the commissioners' court would lack the power to displace him from his rightful authority in that regard, but, as our statement of the facts has shown, nothing of that sort was contemplated or attempted in this case. The pleadings and the affidavits in evidence before the trial hourt here showed that the purpose of these contracts was merely to have the outside attorneys assist the county attorney in the suits contracted for."

Art. 52-24 of our Code of Criminal Procedure created the office of "Criminal District Attorney of Dallas County" and provided that such official should have, in addition to others, the following powers:

"The Criminal District Attorney of Dallas County shall have and exercise in addition to the specific powers given and the duties imposed upon him by this Act, all such powers, dutes (duties) and privileges within said Criminal District of Dallas County as are by law now conferred, or which may hereafter be conferred upon district and county attorneys in the various counties and judicial districts of this state."

Therefore, the rules of law hereinabove set out as being applicable to a county or district attorney are also applicable to the Criminal District Attorney of Dallas County.

Art. 1656a, V. A. C. S., imposes certain duties upon county auditors in all counties having a population of one hundred and ninety thousand or more according to the last preceding Federal

Census, and clothes such officers with certain enumerated powers pertaining to the accounts of all county officers, including District Clerks and District Attorneys, and all precinct officers. Said article contains the following provisions:

"* * *At the close of any fiscal year, or accounting period now or hereafter fixed by law, the County Auditor shall audit, adjust, and settle the accounts of such officer. In the event the County Auditor shall be unable to obtain proper reports or an adequate accounting from any District Attorney, District Clerk, county or precinct officers as herein provided, either during or after his term of office, the County Auditor shall have authority to enforce an accounting thereof, and to take such steps at the expense of the county as are necessary in his judgment to protect the interests of the county or of the persons, firms, or corporations entitled to such funds."

It is our opinion that this statute authorizes the County Auditor of Dallas County, one of the counties to which said statute applies, to take such legal action in the name of the county as he deems necessary to enforce the collection of any money he finds any of the officers named in the statute to be due the county, and to that end he may call upon the Criminal District Attorney of Dallas County to file suit against the delinquent officer. Should the Criminal District Attorney fail or refuse to take such legal action, the County Auditor may, at the expense of the county, employ some attorney to file such suit. However, the authority of the County Auditor to take such legal action is not an exclusive authority, but is concurrent with the authority of the Commissioners' Court and County Treasurer, as well as the duty imposed by statute upon the Criminal District Attorney.

It is our opinion that the Commissioners' Court, under its authority to control and manage the finances and business affairs of the county, has the power and authority to request the District Attorney to bring a suit to enforce settlement of such claims as those here under consideration. It also has the power and authority to employ attorneys to assist him in the prosecution thereof. Under the facts here presented, it is also the duty of the District Attorney to

file such suit and prosecute same independently of any request so to do from the Commissioners' Court, County Auditor or County Treasurer.

We herewith return to you the County Auditor's report enclosed with your request.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Jas. W. Bassett*
         Jas. W. Bassett
           Assistant

JWB:LJ
encl.

APPROVED DEC 22, 1945
ASSISTANT ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN